# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| BRAINSTORM XX, LLC d/b/a ) <br> WWW.ROBOCALLS.CASH, ) <br> and ) <br> LEE "DOC" COMPTON ) <br> ) <br>                     **Plaintiffs,** ) <br> ) <br> v. ) <br> ) <br> DUNCAN CRAIG WIERMAN, ) <br> individually, and/or d/b/a ) <br> SPAMCALLPROFITSYSTEM.COM; ) <br> SPAMCALLPROFITSYSTEM.COM, ) <br> an entity using an assumed name, ) <br> ) <br>                     **Defendants.** ) | CIVIL ACTION NO. _____ |

## COMPLAINT

Plaintiffs BRAINSTORM XX, LLC, d/b/a www.robocalls.cash, and Lee "Doc" Compton, by and through their attorneys, file this complaint against Defendants, alleging as follows:

## JURISDICTION AND VENUE

1. This action arises under the Lanham Act 15 U.S.C. §§ 1051 *et seq.* (the "Lanham Act") and 17 U.S. Code § 501. Accordingly, this Court has federal question jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1221, 28 U.S.C. §§ 1338(a) and (b). Venue in this district is proper under 28 U.S.C. § 1391(b)(2) and (3).

## PARTIES

2. BRAINSTORM XX, LLC, also d/b/a www.robocalls.cash ("Brainstorm") is a Texas corporation with its principal place of business in McKinney, Texas. Plaintiff seeks

preliminary and permanent injunctive relief restraining Defendant's infringement and unauthorized use, monetary remedies, reasonable attorneys' fees, and other relief as the Court deems just and necessary.

3.      Lee "Doc" Compton (Compton) is the sole shareholder and principal agent of Brainstorm. Unless otherwise noted where needed, for this pleading Compton was always acting on behalf of Brainstorm or its predecessors and Brainstorm was acting through the acts of its agent and principal, Compton. Accordingly, Brainstorm and Compton will be referred to jointly as "Plaintiffs" unless a separate identification is legally or factually necessary.

4.      Defendant Duncan Craig Wierman does business through the website spamcallprofitsystem.com, either as the sole proprietor of or as owner of the website. Spamcallprofitsystem.com markets to consumers throughout the United States, including the Eastern District of Texas. Upon information and belief, this Defendant will be present in and about the Eastern District of Texas in connection with the claims asserted below or will be subject to the jurisdiction of this Court.

5.      Defendant spamcallprofitsystem.com sells products to consumers throughout the United States as indicated below, through its owners, agents, servants and/or employees. Pursuant to the Federal Rules of Civil Procedure at Rule 17(b)(3), 17(b)(3)(A), and the Texas Rules of Civil Procedure at Rule 28, uses this website via its assumed name, that being its web address. Defendant spamcallprofitsystem.com is/or will be present in and about the Eastern District of Texas in connection with the claims asserted below or will be subject to the jurisdiction of this Court. This complaint will be amended when the corporate identity, whether sole proprietorship, partnership, incorporation, or otherwise, of spamcallprofitsystem.com is ascertained.

6.      Plaintiffs will refer to Defendants collectively as "Defendants" or Defendant Wierman and Defendant spamcallprofitsystem.com, respectively if applicable.

## BACKGROUND

7. Compton is a consumer credit expert with twenty-five-plus (25+) years of experience. In 2013, after deciding to shift careers to consumer advocacy, Compton went to work for a law firm to manage and operate the non-attorney functions of its consumer credit section. Among other duties, Compton served as an intake coordinator and was responsible for identifying potential cases of consumer abuse by creditors and debt collectors. Many times, those debt collectors and creditors would contact the firm's clients using auto dialers to collect alleged debts. Very often, as Compton learned through his study of the Telephone Consumer Protection Act, those calls were made illegally.

8. Compton left his position with that law firm in 2016 and began working from home on multiple projects. During the summer of 2018, Compton was constantly interrupted by telephone calls from telemarketers attempting to sell him a wide array of products and services. At one point, Compton was getting anywhere from 10 to 20 calls per day. Knowing that these calls were illegal, Compton researched those companies and identified who they were, drafted pre-litigation demand letters and sent them to the companies that were illegally calling him.

9. Compton's first few tries proved successful. It was not long before friends began to ask him how he was making the robocallers pay. Compton inquired on social media about interest in a group focused on stopping the illegal robocallers and making them pay for their wanton disrespect of the law. Compton was able to quickly assemble a group of approximately fifty (50) people on Facebook who were as frustrated with the incessant and illegal telemarketing calls that violate the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA") among others.

10. That group would answer the telemarketing calls they were receiving, collect information from the callers, and then identify the illegal robocallers. Members were then able to have the identity information needed to effectively send cease and desist letters that demanded payment of the TCPA's civil penalties. People who sent the cease-and-desist demand letters started seeing a reduction in illegal collecting relatively sizable checks, ranging from hundreds of dollars to thousands of dollars. More importantly, these same people also saw a reduction in illegal robocalls, presumably because their numbers were being highlighted within the robocalls industry.

11. Using the data collected through that private group on Facebook and through his own experiences, Compton developed the "Turning Robocalls Into Cash" kit ("the kit") (see Exhibit A).

12. The kit details the practical steps that even non-lawyers can take to stop receiving robocalls by enforcing their rights under the TCPA.

13. The kit was eventually released for sale as a thirty (30) page PDF download and sold online for $47.00. The kit was originally released in September of 2018. Using nothing but word-of-mouth to promote the kit, sales began to increase steadily, based on little more than the success stories of existing users and the original test group.

14. In January of 2018, Compton reached out via social media to consumer reporter Steve Noviello at Fox 4 News in Dallas, Texas. Mr. Noviello used the kit himself and proceeded to collect $5,750.00 in a little under two (2) weeks. At that point, he decided to do a feature story on Fox 4 about the kit ("the Feature Video"). That original story, which has since won an Emmy Award, went viral the night the story first aired and continued to do so the following day, when Noviello presented the same story in ten (10) other major markets around the country.

15. From that time on, Compton contends that consumer demand and media interest have continued to increase. Acting as Brainstorm's CEO, Compton regularly handles press requests from television media, radio stations, and print media. The kit has been featured in news stories from coast to coast on all the major networks, during which segments Compton has been featured as its author and creator. Additionally, Compton has appeared as a guest on a number of live videos via social media and/or live broadcast.

### DEFENDANTS' UNLAWFUL CONDUCT

16. On or about March 8, 2021, Defendant Wierman purchased the "Turning Robocalls Into Cash" kit for its designated price of $47.00 USD.

17. On or about March 8, 2021, Defendant Wierman signed up for the www.robocalls.cash member's forum and paid the associated membership fee of $29.00 USD.

18. On or about March 8, 2021, Defendant Wierman breached the community guidelines for the membership forum by posting prohibited content.

19. Due to breaching community guidelines, Defendant Wierman was notified by Plaintiffs on March 22, 2021, that his membership in the member forum had been permanently cancelled (see Exhibit B). Plaintiffs also issued a courtesy refund of the $29.00 USD membership fee that Defendant Wierman had previously paid on March 8, 2021.

20. Defendant Wierman then requested a full refund for the "Turning Robocalls Into Cash" kit, which was denied because the kit's Guarantee Policy states the following:

> "If, after 90 days from purchase, and at least three attempts at collecting with the template demand letters included in the kit, as instructed in the kit, you've not received at least one settlement offer from the robocallers, you're entitled to a full refund, less credit card processing fees. Simply send us proof that you've followed the instructions in the kit, and we'll refund your money, less our credit card processing fees" (see Exhibit C).

The purchaser must agree to this stipulation as part of the terms of purchase before they can successfully pay for and download the kit.

21.     In response to Plaintiffs' explanation of the policy and the inability to issue a refund, Defendant Wierman stated that he would "create a similar course then and promo" (see Exhibit B). This means that Defendant Wierman knowingly and willfully copied Plaintiffs' course material.

22.     Thereafter, Defendants created the website spamcallprofitsystem.com to sell Plaintiffs' course under a different name, "How to Make Money From Spam Callers" ("Unauthorized Merchandise"). Defendant Wierman's course uses the information from Plaintiffs' course. The information is substantively the same and even presented in the same order (see Exhibit D).

23.     Additionally, Defendant Wierman simply copied and uploaded the Feature Video that has been used to promote Plaintiffs' kit as the "intro video" for his "How to Make Money From Spam Callers" course.

24.     The inclusion of the Feature Video as well as the copy and paste nature of the information in Defendants' course is likely to cause consumer confusion, allow Defendants to profit from the notable renown and acclaim achieved by Plaintiffs, significantly impact the integrity of Plaintiffs' business, and cause loss of sales and reduction in profit for Plaintiffs.

25.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), states:

**(a) CIVIL ACTION**

**(1)** Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

**(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

**(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

## COUNT I

### CLAIM FOR RELIEF – VIOLATION OF THE LANHAM ACT

26. Plaintiffs reallege each allegation set forth in paragraphs 1-25 above.

27. By reason of the foregoing, hereby asserts a claim against the Defendants for injunctive and monetary relief pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), with regards to the false designation of origin and false descriptions and representations in commerce of Defendants' Unauthorized Merchandise.

28. Defendants' unfair competition with Plaintiffs was and is willful. Defendants promoted its website on Plaintiffs' attorney's July 4, 2021, TikTok® video by posting a link to its website, www.spamcallprofitsystem.com, in the comments (see Exhibit F). The video can be accessed through https://vm.tiktok.com/ZMdx92otd/.  The handle of the commenter, @wittyalpaca, is Defendant Duncan Wierman.  It is well known that Christopher Roberts (TikTok® handle @classactionlawyer) is an attorney for Plaintiffs and works with Plaintiffs on a routine basis.  Plaintiffs often partner in live videos on TikTok® to demystify how to combat robocalls, and Plaintiffs routinely reference Mr. Roberts in their TikTok® videos. Defendants knew of Plaintiffs' connection to Mr. Roberts when it advertised its Unauthorized Merchandise on Mr. Roberts' video.

## COUNT II

## COPYRIGHT INFRINGEMENT

29. Plaintiffs reallege each allegation set forth in paragraphs 1-28 above.

30. Compton applied for and received copyright registration for the "Turning Robocalls Into Cash" kit. The registration was given an effective date of June 11, 2021 and accompanying Registration Number TX 8-979-301 (see Exhibit G).

31. By reason and foregoing, Plaintiffs hereby assert a claim against the Defendants for injunctive and monetary relief pursuant to 17 U.S.C. § 501(a), with regards to copyright infringement of Plaintiffs' original work created in the kit, which was subsequently copied by Defendants in the Unauthorized Merchandise.

31. Defendants' infringement of Plaintiffs' copyrighted materials was and is willful. Defendants promoted its website on Plaintiffs' attorney's July 4, 2021, TikTok® video by posting a link to its website, www.spamcallprofitsystem.com, in the comments (see Exhibit E). The video can be accessed through https://vm.tiktok.com/ZMdx92otd/.  The handle of the commenter, @wittyalpaca, is Defendant Duncan Wierman.  It is well known that Christopher Roberts (TikTok® handle @classactionlawyer) is an attorney for Plaintiffs and works with Plaintiffs on a routine basis.  Plaintiffs often partner in live videos on TikTok® to demystify how to combat robocalls, and Plaintiffs routinely reference Mr. Roberts in its TikTok® videos. Defendants knew of Plaintiffs' connection to Mr. Roberts when it advertised its Unauthorized Merchandise on Mr. Roberts' video.

## JURY DEMAND

32. Although the Plaintiffs seek an equitable injunction, even cases predominantly sounding in equity can sometimes have one or more issues of fact or law suitable for a jury.

Accordingly, should the Court find that there are any issues of fact or law suitable for a determination by a jury, the Plaintiffs respectfully request a jury trial.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs Lee "Doc" Compton and BRAINSTORM XX, LLC, d/b/a www.robocalls.cash, seek relief against Defendants, and all others acting in concert with or on behalf of the Defendants, and request that judgment be entered as follows:

A. That Defendant, their principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, attorneys and representatives and all of those in privity with or acting under the direction or control of any of them, be preliminarily and permanently enjoined and restrained from:

1. Using Plaintiffs' copyrighted materials or any materials similar to Plaintiffs' copyrighted materials and Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in connection with the advertisement, promotion, distribution, offering for sale or selling of any goods or services, including without limitation the advertisement, promotion, distribution, offering for sale or sale of the Infringing Products;

2. Performing any acts or using any trademarks, names, words, images, news articles, news stories, or phrases that are likely to cause confusion, to cause mistake, to deceive or otherwise mislead the trade or public into believing that Plaintiffs and Defendants are one and the same or are in some way connected or that Plaintiffs have endorsed, licensed, or are a sponsor of Defendants (or that Defendants have endorsed, licensed, or are a sponsor of Plaintiffs) or that the goods or services of Defendants originate with Plaintiffs or any authorized user of the Plaintiffs' copyrighted materials or are likely to lead the trade or public to associate Defendants with Plaintiffs; and

      3.      Engaging in acts of unfair competition, as defined by to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

      B.      That Defendants be required to file with the Court and serve on Plaintiffs a statement under oath evidencing compliance with any preliminary or permanent injunctive relief ordered by the Court within fourteen (14) calendar days after the entry of such order of injunctive relief;

      C.      That Defendants, its principals, partners, franchisees, agents, employees, licensees, affiliates, distributors, producers, attorneys and representatives and all of those in privity with or acting under the direction or control of any of them be required to deliver up for destruction all advertising, promotional materials, point of sale materials, labels, packaging, and any other materials bearing the infringing marks together with all artwork, plates, molds, matrices and other means and materials for making and reproducing the same;

      D.      That Defendants be ordered to disgorge all profits attributable to its infringement of the Plaintiffs' copyrighted materials and unlawful conduct under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in an amount to be determined at trial, and that such amount be trebled;

      E.      That Plaintiffs be awarded all actual damages caused by Defendants' infringement of the Plaintiffs' copyrighted materials and unlawful conduct under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in an amount to be determined at trial, and that such amount be trebled;

      F.      That Plaintiffs be awarded full restitution for all damage caused by Defendants' infringement of the Plaintiffs' copyrighted materials and unlawful conduct under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in an amount to be determined at trial;

G. That Plaintiffs be awarded damages in the form of corrective advertising required to remedy Defendants' infringement of the Plaintiffs' copyrighted materials and unlawful conduct under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), in an amount to be determined at trial;

H. That Plaintiffs be awarded damages in the form of a reasonable royalty to compensate it for Defendants' infringement of Plaintiffs' copyrighted materials, in an amount to be determined at trial;

I. That Plaintiffs recover their reasonable attorneys' fees and costs of suit under 15 U.S.C. § 1117, as this case is exceptional; and

J. That Plaintiffs be granted such other and further relief as this Court shall deem just, lawful or equitable.

RESPECTFULLY SUBMITTED,

  /s/JeanetteMBraun_____
Jeanette M. Braun, Esq.
Illinois State Bar No. 6332483
(Application for Admittance to Texas Eastern District Will Be Submitted)
Braun IP Law, LLC
1600 W. Lake Ave, Suite 103B
Addison, IL 60101
Ph: (773) 504-4036
Fax: (312) 240-0825
jmbraun@brauniplaw.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document along with its Exhibits will be served via Certified Mail, Return Receipt Requested to the Defendant Duncan Craig Wierman, 306 Oak Brook Way, Taylors, SC 29687, and also sent via USPS First Class Mail on the 27th day of July, 2021.

                                                     _/s/JeanetteMBraun_____
                                                   Jeanette M. Braun, Esq.