UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| BRAINSTORM XX, LLC d/b/a | § | |
| WWW.ROBOCALLS.CASH, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:21-CV-584-SDJ |
| | § | |
| DUNCAN CRAIG WIERMAN, | § | |
| Individually and/or d/b/a | § | |
| SPAMCALLPROFITSYSTEM.COM | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Duncan Craig Wierman's Amended Motion to Dismiss for Lack of Personal Jurisdiction. (Dkt. #34). Plaintiffs Brainstorm XX, LLC d/b/a www.Robocalls.cash and Lee "Doc" Compton (collectively, "Brainstorm") responded to the motion. (Dkt. #54). After full consideration, the Court **GRANTS** the motion.

\* \* \*

Wierman's relationship with Texas is far too thin to support haling him to the State to defend himself in a lawsuit. Aside from two internet sales and miscellaneous travel, Wierman has not purposefully directed his actions toward Texas or "availed [himself] of the privilege of doing business" here. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). The Court therefore holds that Brainstorm has failed to establish a prima facie case for personal jurisdiction in this forum.

### I. BACKGROUND

Brainstorm and Wierman are in the business of fighting spam calls. Brainstorm sells an informational booklet that instructs consumers on recovering

1

quick cash settlements against companies that violate federal telemarketing laws. Wierman purchased Brainstorm's booklet and later began selling an informational product that allegedly provides the same instruction but at a steep discount.

Based on the alleged similarities between these products, Brainstorm sued Wierman for copyright infringement and for violating the Lanham Act. Setting the merits of these claims aside, Wierman moves to dismiss the amended complaint for lack of personal jurisdiction on grounds that neither he nor his business have marketed products in Texas or otherwise availed themselves of the privilege of doing business in Texas, as would be required to support a lawsuit against them in the State.

Wierman's primary connection to Texas is that he maintains a publicly accessible website. Although the website is available to Texas consumers, Brainstorm does not assert that the website targets the State specifically or that the website does substantial business in Texas. Of the website's fourteen total sales of allegedly infringing products, only two of them were made in Texas—for a total of $14.00 in Texas revenue.

Besides the publicly accessible website and two internet sales, Wierman does not have any relationship with Texas except that he visited the State on miscellaneous trips. These trips occurred before the events giving rise to this lawsuit and do not appear to have anything to do with spam calls. At least one of the trips was for a real estate conference.

Brainstorm also asserts personal jurisdiction based on actions that, while not specifically directed toward Texas, allegedly caused Brainstorm to suffer injuries in the State. In support of this effects-based theory of jurisdiction, Brainstorm asserts that, because Brainstorm and its principal, Lee "Doc" Compton, reside in Texas and developed the alleged intellectual property at issue in this State, Texas is where Brainstorm experienced the harm alleged in this suit and where Wierman intentionally directed his alleged misconduct. As evidence of the intentionality behind Wierman's alleged misconduct, Brainstorm contends that Wierman purchased a Brainstorm product over the internet, enabling him to "pirate" that product, and attempted to solicit customers for his own products through comments on a Brainstorm associate's social media account. (Dkt. #54 at 4–7).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) allows a party to raise the defense that a court lacks personal jurisdiction. The Court's jurisdiction over a defendant is constrained by due process. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). To pursue a lawsuit against a defendant, a plaintiff must therefore establish that the defendant maintains adequate contacts with the forum state such that haling him to the State to defend himself would neither be "[un]reasonable" nor offend "traditional notions of fair play and substantial justice." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Court*, 141 S.Ct.

1017, 1024, 209 L.Ed. 2d 225 (2021) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). [1]

Personal jurisdiction over a defendant can be established under two general theories—either general jurisdiction, which refers to the Court's "all-purpose" jurisdiction over defendants that are essentially at home in the forum state; or specific jurisdiction, which refers to "case-linked" jurisdiction arising from a defendant's activities directed toward the forum state. Only specific jurisdiction is at issue in this case. *See id.*

The Court evaluates specific jurisdiction using a "three-step" procedure. *Admar Int'l, Inc. v. Eastrock, L.L.C.*, 18 F.4th 783, 786 (5th Cir. 2021). First, the plaintiff must demonstrate that the defendant has minimum contacts with the forum state—meaning, that the defendant purposely directed his activities at the forum state and availed himself of the privilege of doing business in the State. *Id.* Second, the plaintiff must demonstrate that the causes of action asserted against the defendant arise from the defendant's contacts with the forum state. *Id.* And third, after the plaintiff establishes the first two requirements, the burden then shifts to the defendant to prove that maintaining a lawsuit in the forum state would be either "unfair" or "unreasonable."[2] *Id.*

---

[1] The Court's jurisdiction must also satisfy the forum state's long-arm statute. *Def. Distributed v. Grewal*, 971 F.3d 485, 490 (5th Cir. 2020). Because the Texas long-arm statute stretches to the constitutional maximum, that statute does not require separate analysis here. *Id.*

[2] These elements apply differently to foreign defendants that are not subject to personal jurisdiction in any State. *See Douglass v. Nippon Yusen Kabushiki Kaisha*, No. 20-30379, 2022 WL 3368289, at *6 (5th Cir. Aug. 16, 2022) (en banc); *Patterson v. Aker Sols.*

Although the burden rests with the plaintiff to establish the core elements of personal jurisdiction, the plaintiff can satisfy that burden at the pleading stage by simply presenting a prima facie case for jurisdiction. *Walk Haydel & Assocs.*, 517 F.3d at 241. That is true even when the Court has ordered limited jurisdictional discovery, as it has done here. *Id.*

### III. DISCUSSION

Brainstorm has not established a prima facie case that Wierman purposefully availed himself of the privilege of conducing activities in Texas, as would be required to support a lawsuit against him here.[3] And Brainstorm's invocation of the *Calder* effects doctrine to support jurisdiction in Texas is unavailing because the doctrine is

---

*Inc.*, 826 F.3d 231, 233–34 (5th Cir. 2016). Here, neither side asserts that personal jurisdiction should be evaluated under these alternative rules for foreign defendants. Although Wierman describes himself as a foreign resident, (Dkt. #34-1 ¶ 2); (Dkt. #23 ¶¶ 10–11), Brainstorm has not alleged that all States lack jurisdiction over him (Dkt. #54 at 2–3). To the contrary, the process server filed an affidavit suggesting that Wierman may reside in Florida. (Dkt. #23 ¶ 5). While these facts leave open questions about where Wierman may be subject to jurisdiction, the Court will evaluate personal jurisdiction here under the ordinary specific jurisdiction framework absent any suggestion from Brainstorm that the more lenient alternative framework for foreign defendants should apply. *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 241 (5th Cir. 2008) (observing that the burden of establishing a prima facie case for personal jurisdiction rests with the plaintiff).

[3] Because the Court finds that Brainstorm has failed to establish the first element of personal jurisdiction, purposeful availment, it need not evaluate whether Brainstorm's claims arise from Wierman's actions directed toward Texas or whether the exercise of jurisdiction would be unreasonable. The Court notes, however, that, in a recent unpublished opinion, the Fifth Circuit held that unfair competition claims arise in the locations where the defendant sold infringing products that were likely to cause customer confusion. *Getagadget, L.L.C. v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204, at *5 (5th Cir. Mar. 30, 2022) (per curiam). The *Getagadget* holding suggests that—if Wierman's Texas sales were more than isolated and sporadic—Brainstorm could possibly establish personal jurisdiction for their unfair competition claim or for similar causes of action arising from those sales.

inapplicable where, as here, the defendant has not committed any intentional acts that were expressly directed toward Texas.

**A. Wierman Has Not Purposefully Availed Himself of Texas Law.**

At the outset, Brainstorm has not established that Wierman purposefully directed his actions toward Texas or availed himself of the privilege of doing business in the State. The Court evaluates purposeful availment in internet cases using the *Zippo* framework. Under that framework, Brainstorm cannot establish purposeful availment based on Wierman's internet presence alone. Nor can Brainstorm establish purposeful availment by combining Wierman's internet presence with isolated sales and miscellaneous travel.

### i. Wierman's website occupies the middle of the *Zippo* spectrum.

The *Zippo* framework applies when courts evaluate purposeful availment in internet cases. *See Mink v. AAAA Dev. LLC*, 190 F.3d 333, 336 (5th Cir. 1999) (adopting the reasoning from *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa.1997)). Under that framework, a website's connections to the forum state are measured by its interactivity. *Id.* At one end of the spectrum are passive websites that merely display information without directly engaging with consumers or selling products. *Id.* At the other end of the spectrum are active websites that facilitate transactions with forum state residents and involve the knowing and repeated transmission of files over the internet. *Admar*, 18 F.4th at 786. Between these two extremes, courts evaluate purposeful availment by looking at the website's "level of interactivity" and the "commercial nature of the exchange of information that occurs on the [w]ebsite." *Id.* (quotation omitted).

Wierman's website falls in the middle of the *Zippo* spectrum. It is more than passive in that it enables consumers to register accounts and purchase and download products. But it has not facilitated the knowing and repeated transmission of files to Texas residents and has not facilitated Texas business transactions, except for isolated sales. Neither side provides any authorities suggesting that the website falls anywhere other than the middle of the *Zippo* spectrum. (Dkt. #34 at 4 –6); (Dkt. #54 at 7–8).

Because the website falls in the middle of the *Zippo* spectrum, the Court must evaluate whether the website targeted Texas specifically based on its total interactivity and commercial nature. Here, that requires the Court to determine whether the website's existence alone demonstrates purposeful availment and, if not, whether Brainstorm can establish purposeful availment by combining the website's existence with isolated sales and miscellaneous travel.

### ii. Wierman's online presence alone does not show that he purposely availed himself of Texas law.

Brainstorm cannot secure jurisdiction in Texas based solely on the existence of Wierman's website. *Admar*, 18 F.4th at 787. The law is settled that "a defendant does not have sufficient minimum contacts with a forum state just because its website is accessible there." *Id.* Even websites with greater levels of interactivity than the website at issue here, occupying higher regions on the *Zippo* spectrum, do not necessarily provide a basis for jurisdiction in a particular forum state when they do not target the forum state specifically. *See id.* (citing *be2 LLC v. Ivanov*, 642 F.3d 555, 559 (7th Cir. 2011), for the proposition that even a highly interactive website will not

7

form the basis for personal jurisdiction if it is merely accessible from, but not targeted at, the forum state). Otherwise, every business or person with a website would be subject to jurisdiction in all fifty States. *See id.* at 788.

### iii. Wierman's isolated sales and unrelated travel do not show that he purposefully availed himself of Texas law.

Because Wierman's website alone does not establish his purposeful availment of the privilege of conducting activities in Texas, Brainstorm focuses special attention on Wierman's two internet sales and miscellaneous trips to the State. In pointing to these contacts as grounds for Texas jurisdiction, Brainstorm invokes the principle that, under the right circumstances, even a single contact can support personal jurisdiction over a defendant. (Dkt. #54 at 5).

The "single contact" principle, however, applies only to a purposeful contact and not to contacts that are "isolated," "fortuitous," or "sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 228, 230 (5th Cir. 2012). The important question is whether the defendant targeted the forum state. *Admar Int'l*, 18 F.4th at 786. When the defendant's actions were not specifically targeted toward the forum state and his only contacts with the forum state were "attenuated" or "random," the court lacks personal jurisdiction over the defendant and must grant the defendant's motion to dismiss. *Burger King Corp.*, 471 U.S. at 475; *Pervasive Software Inc.*, 688 F.3d at 228.

In the specific context of websites, the Fifth Circuit and district courts within the circuit routinely hold that sporadic internet sales are the type of isolated contacts

8

that do not establish the defendant's purposeful availment of the privilege of doing business in the forum state. *See, e.g.*, *Admar Int'l, Inc.*, 18 F.4th at 788 n.1 ("Eastrock's delivery of a single $13 product to Louisiana is the type of isolated act that does not create minimum contacts."); *Pervasive Software Inc.*, 688 F.3d at 228 ("A corporation's sales to forum residents must be more than isolated occurrences for the assertion of jurisdiction to satisfy the requirements of due process." (quotation omitted)); *M3GIRL Designs LLC v. Purple Mountain Sweaters*, No. 3:09-CV-2334-G, 2010 WL 3699983, at *7 n.3 (N.D. Tex. Sept. 13, 2010) (holding that an isolated sale to a Texas resident on the defendant's website was a "mere fortuity" that did not support Texas jurisdiction for plaintiff's copyright, false designation of origin, and unfair competition claims).[4]

In a recent decision, for example, the Fifth Circuit held that the plaintiff had failed to demonstrate personal jurisdiction over the defendant even though the defendant advertised allegedly infringing products on a moderately interactive

---

[4] *See also Best Little Promohouse in Tex. LLC v. Yankee Pennysaver, Inc.*, No. 3:14-CV-1824-BN, 2014 WL 5431630, at *6 (N.D. Tex. Oct. 27, 2014) (holding that isolated internet sale did not establish that defendant purposefully availed itself of Texas law to support jurisdiction for unfair competition and trademark infringement); *Viahart, LLC v. Arkview LLC*, No. 6:19-CV-00406, 2020 WL 4905542, at *6 (E.D. Tex. Aug. 20, 2020) ("[T]he court is not persuaded that the sale of product to Texas residents through Amazon's platform is anything more than the fortuitous result of that platform's global presence."); *Trahan v. Vivis Corp.*, No. 6:22-CV-00152, 2022 WL 1221343, at *4 (W.D. La. Feb. 25, 2022) ("Four sales do not constitute the purposeful availment contemplated by the most recent Fifth Circuit jurisprudence."), *adopted by* 2022 WL 1214498 (W.D. La. Apr. 25, 2022); *S. Marsh Collection, LLC v. C.J. Printing, Inc.*, No. 14-495-JJB-SC, 2015 WL 331919, at *5 (M.D. La. Jan. 26, 2015) (holding that shipment of three "disputed products" through transactions that were completed through PayPal did not support Louisiana jurisdiction). *But see Tempur-Pedic Int'l., Inc. v. Go Satellite, Inc.*, 758 F.Supp.2d 366, 373–76 (N.D. Tex. 2010) (holding that an interactive website combined with three sales to Texas residents supported Texas jurisdiction).

9

website (similar to the website at issue here) and had even delivered one allegedly infringing product to the forum state. *Admar Int'l, Inc.*, 18 F.4th at 786–87, 788 n.1. Although the product had been purchased from a third-party retailer instead of through the defendant's website directly, the court's reasoning did not turn on that distinction. Instead, the court stated simply that the defendant's "delivery of a single $13 product to Louisiana" was an "isolated act that [did] not create minimum contacts." *Id.* at 788 n.1.

The *Admar Int'l* holding reaffirms a core principle of personal jurisdiction: a defendant's sales to forum residents "must be more than 'isolated' occurrences for the assertion of jurisdiction to satisfy the requirements of due process." *Id.* (quoting *Pervasive Software Inc.*, 688 F.3d at 228). The Fifth Circuit applied the same principle in *Pervasive Software* when it held that fifteen internet sales were too isolated to support personal jurisdiction over the defendant. *Pervasive Software Inc.*, 688 F.3d at 228. Both *Admar Int'l* and *Pervasive Software* stand for the proposition that sporadic internet sales, on their own, do not support personal jurisdiction. *Id.* at 228.

Here, Wierman's isolated internet sales and miscellaneous travel fall short of demonstrating his purposeful availment of Texas law. Although Wierman sold two products in Texas (for $14.00 in total sales), Brainstorm does not assert that Wierman marketed the products to Texas consumers specifically, as distinguished from consumers in any other State. Likewise, Brainstorm does not contend, for example, that Wierman owns Texas retail space, that he visits the State to promote his products, that he tailors his marketing to the Texas market, that he has hired Texas

10

agents, or that his website amounts to a "virtual store" in Texas. *See, e.g., Am. Eyewear, Inc. v. Peeper's Sunglasses & Accessories, Inc.*, 106 F.Supp.2d 895, 901 (N.D. Tex. 2000); *Pervasive Software Inc.*, 688 F.3d at 228. Without facts demonstrating Wierman's purposeful engagement with the State, Brainstorm cannot maintain a lawsuit in this forum.

It makes no difference that Wierman's Texas sales may have constituted approximately fourteen percent of his total business. (Dkt. #56 at 5). That fact speaks only to the size of his business and not the purposefulness of his actions directed toward Texas. The Court therefore holds that Brainstorm has failed to establish a prima facie case that Wierman purposefully directed his actions toward Texas or availed himself of the privilege of doing business in the State.

**B. The *Calder* Effects Test Also Fails To Support Jurisdiction in Texas.**

Brainstorm cannot salvage jurisdiction in Texas by invoking the *Calder* effects test. Under that test, which is often deployed in defamation cases, Brainstorm must demonstrate that Wierman committed an intentional tort, that he expressly aimed the tort at Texas, and that Brainstorm suffered foreseeable injuries in the State as a result. *See Calder v. Jones*, 465 U.S. 783, 789 – 90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Source Network Sales & Mktg., LLC v. Ningbo Desa Elec. Mfg. Co.*, No. 3:14-CV-1108-G, 2015 WL 2341063, at *5 (N.D. Tex. May 15, 2015).

The *Calder* effects test provides a basis for personal jurisdiction only in "rare" circumstances. *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 486 (5th Cir. 2008). To recover under the test, Brainstorm must demonstrate that Texas was the "focal point" of Wierman's alleged misconduct and the harm Brainstorm allegedly suffered.

*Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 318 (5th Cir. 2021). If, however, Wierman directed his actions at Texas no more specifically than any other State, the case must be dismissed for lack of personal jurisdiction. *See id.*; *Revell v. Lidov*, 317 F.3d 467, 473 (5th Cir. 2002).

The recent decision in *Johnson* demonstrates *Calder*'s limited applicability in internet cases. In that case, the Fifth Circuit held that plaintiff had failed to establish personal jurisdiction over the Huffington Post news website even though the website had published an allegedly defamatory article accusing him, a Texas resident, of being a white nationalist and holocaust denier. 21 F.4th at 316, 323. Although the website was accessible in Texas, sold merchandise in Texas, and contracted with Texas advertisers, these actions did not demonstrate that Texas was the "focal point" of the allegedly defamatory article as distinguished from any other State. *Id.* at 319–20.

The rules articulated in *Johnson*, a defamation case, apply to intellectual property cases as well. *McFadin v. Gerber*, 587 F.3d 753, 762 (5th Cir. 2009); *TimeGate Studios, Inc. v. TimeFly Studios, Inc.*, No. H-08-1058, 2008 WL 11407329, at *4 (S.D. Tex. Oct. 9, 2008). To prevail against Wierman, Brainstorm must therefore demonstrate that he focused his allegedly infringing activity on Texas. *TimeGate Studios*, 2008 WL 11407329, at *4 ("*Calder* should not be used to place jurisdiction in the [copyright] owner's home state unless there is proof that the defendant expressly aimed and focused its allegedly infringing activity at that state." (quotation omitted)).

12

It is not enough that Brainstorm, creator of the allegedly infringed intellectual property, will suffer injuries in the State. *See McFadin*, 587 F.3d at 762 (holding that plaintiff had not established personal jurisdiction where defendant sold allegedly infringing handbags and some of the bags made their way to Texas by way of a third-party broker because "the actions of selling allegedly infringing handbags are not directed towards Texas in any manner"); *see also Healix Infusion Therapy, Inc. v. HHI Infusion Servs.*, No. H-09-3440, 2010 WL 2277389, at *5 (S.D. Tex. June 3, 2010) (holding that plaintiff had not established personal jurisdiction when it asserted merely that the defendant had "undertaken infringing acts with knowledge that the owner of the infringed intellectual property reside[d] in Texas").

Here, Brainstorm has not established that Wierman focused his alleged misconduct on Texas as distinguished from any other State. To the contrary, Brainstorm's allegations demonstrate that the products at issue achieved national recognition and were sold and marketed across the country. (Dkt. #12 ¶¶ 14–15). If Wierman infringed these products either by starting a competing website or by soliciting customers on a Brainstorm associate's social media, it appears that he did so to tap into Brainstom's national presence as opposed to the Texas market specifically. *See* (Dkt. #12 ¶ 4 ("[Wierman] markets to consumers throughout the United States . . . .")). For these reasons, Brainstorm has failed to establish a prima facie case for personal jurisdiction under the *Calder* effects test.

### IV. CONCLUSION

Wierman's connections to this forum are few and far between. Although he sold two products in Texas over the internet and visited the State on miscellaneous trips,

these connections do not establish that Wierman purposefully availed himself of Texas law as would be required to maintain a lawsuit against him in the State. That conclusion holds true not only under the traditional framework for evaluating personal jurisdiction in internet cases but also under the *Calder* effects test.

Therefore, it is **ORDERED** that Wierman's Amended Motion to Dismiss for Lack of Personal Jurisdiction, (Dkt. #34), is **GRANTED**. Brainstorm's amended complaint against Wierman is **DISMISSED**.

**So ORDERED and SIGNED this 22nd day of September, 2022.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE